## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| **FATHER CHRISTOPHER HARTLEY,** ) | |
| ) | |
| **Movant,** ) | |
| ) | |
| v. ) | Civil Action No. 1:08-mc-00010-RJL |
| ) | |
| **FELIPE VICINI LLUBERES, *et al.*,** ) | **ORAL HEARING REQUESTED** |
| ) | |
| **Respondents.** ) | |
| ) | |
| _____ ) | |

### PLAINTIFFS' OPPOSITION TO FATHER CHRISTOPHER HARTLEY'S MOTION TO QUASH SUBPOENA DUCES TECUM

Plaintiffs Felipe Vicini Lluberes and Juan Vicini Lluberes (hereinafter, "Plaintiffs", or the "Vicinis"), by and through their undersigned counsel, hereby oppose Father Christopher Hartley's Motion to Quash Non-Party Subpoena, stating as follows:

### I. INTRODUCTION

Brothers Felipe and Juan Vicini, members of a family in the Dominican Republic who own and operate sugar cane fields, processing centers and a sugar mill and related equipment in the San Pedro de Macroís area, are Plaintiffs in a defamation action styled *Felipe Vicini Lluberes, et al., v. Uncommon Productions, LLC, et al.*, Civil Action No. 07-CV-11623 DPW, currently pending before the Honorable Douglas P. Woodlock in the United States District Court for the District of Massachusetts (the "Action").

In the Action, the Vicinis seek preliminary and permanent injunctive relief and declaratory judgment against a Massachusetts filmmaker and his production company ("Defendants") who produced and have distributed throughout the United States a purported "documentary" film, including repeated showings in and around Washington, DC, entitled *The Price of Sugar* ("*POS*"),

which purports to depict current working and living conditions in the sugar cane fields and villages, known as *bateyes*, in the Dominican Republic. In the course of this "documentary," the filmmaker, largely through Fr. Hartley, who appears throughout the film, and whose statements about the Vicinis are the central focus of the "documentary," falsely accuses the Vicinis of heinous crimes, including *inter alia*, murder, attempted murder of a priest (Fr. Hartley), human trafficking and obstruction of justice.

For example, Fr. Hartley states in the film that:

> **The Vicini family have a lot of blood on their hands**. This is well known. Nobody dares speak out and say it because many people fear for their lives or the lives of their loved ones. **And this is a fact.** People disappear. People are never found.

*POS*, 23:38 (emphasis added). This statement of alleged "fact" by Fr. Hartley constitutes one of several false statements that form the predicate of the Vicinis' claim for defamation *per se*. In response to the Vicinis' interrogatories, Defendants have cited Fr. Hartley as the primary source for their scandalous allegations against the Vicinis, making Fr. Hartley one of the key witnesses in the case. Indeed, documents produced by Defendants show that Fr. Hartley was the person who prepared the filmmaker for his interview with Felipe Vicini prior to release of the film, counseling the filmmaker to "[c]ongratulate them [the Vicinis] for all of the recent changes" on their *bateyes*, and "[t]hen [go for the] jab."[1]

Fr. Hartley has also thrust himself into Defendants' promotion of *POS* in the United States, appearing at a screening here in Washington, DC, on November 14, 2007, before the Congressional Human Rights Caucus, after which Fr. Hartley spoke, without the administration of any oath, repeating many of the same false allegations against the Vicinis contained in *POS*. In response to

---

[1] In the filmmaker's notes, Fr. Hartley refers to the Vicinis as "pioneers" in improving the working and living conditions on their *bateyes*, in contrast to the other private and state-owned *bateyes*. The notes show that Fr. Hartley and Defendants knew prior to release of the film that the allegations against the Vicinis were false and that the scenes and pictures shown (some of which were lifted without attribution from books authored by others) were taken on property *not* owned by the Vicinis.

one of the questions in the session following the showing of *POS*, Fr. Hartley reluctantly revealed a material fact omitted from the film: *i.e.*, that the Catholic Church declined to renew his contract, requiring him to leave the Dominican Republic (having been sent to the D.R. by the Archdiocese of New York). Even this statement by Fr. Hartley was a "stretch." In point of fact, the Bishop of the Catholic Diocese of San Pedro de Macorís, to which he had been assigned, specifically relieved him of his duties as a pastor and priest there for cause. Elaborating, Fr. Hartley claimed that the Church had been "seduced" by the Vicinis, twice describing the Church's behavior as "deplorable." [2]

It was shortly after this screening on Capitol Hill that the Vicinis arranged to have Fr. Hartley – their principal accuser and Defendants' key witness – served with the Subpoena in the most respectful way possible.

As set forth in the attached Affidavit of Scott Kucik of Capitol Process Services, Inc. ("Capitol"), a ten-year veteran server and supervisor of other servers at Capitol, who has personally served process on behalf of this Honorable Court and other courts on myriad occasions, the Vicinis did properly serve Fr. Hartley with the Subpoena on November 14, 2007. Mr. Kucik's sworn account has been confirmed by a disinterested eye witness, Joe Johns of CNN, who Fr. Hartley testifies was with him at the time.

It is a matter of record that Fr. Hartley failed to object in a timely manner to the Subpoena within fourteen (14) days, as required under Rule 45 (*i.e.*, by no later than November 28, 2007). Indeed, Fr. Hartley waited to file his Motion to Quash and untimely Objections on the afternoon of January 4, 2008, some *fifty-two (52) days after service of the Subpoena* and *after* the 10:00 a.m. January 4 deadline for producing the requested documents.

---

[2] The Church has expressed a different view: in Circular #012-06, for the Entire Diocese of San Pedro de Macorís, dated December 21, 2006, Bishop Francisco Ozoria Acosta, announced that, despite some "material and good work" Fr. Hartley had done in the Dominican Republic, the Church asked Fr. Hartley to leave because of "serious offenses… [Fr. Hartley's] arrogance and zeal for self-promotion led him to believe that nothing would work without him."

The primary basis of Fr. Hartley's Motion is his sworn Declaration, dated January 4, 2008, in which he places himself at the precise location specified in Mr. Kucik's Affidavit. He declares that "while accompanied by a reporter from CNN, Joe Johns, [he] did hear an individual call out [his] name," but he denies that he saw Mr. Kucik or that Mr. Kucik ever attempted "to hand [him] any documents." Hartley Declaration, ¶ 9.

Fr. Hartley's sworn account is demonstrably false. As the Court will see from Mr. Kucik's Affidavit, Mr. Kucik approached Fr. Hartley at the intersection if 1st & Independence Avenue on Capitol Hill and addressed Fr. Hartley by name, whereupon Fr. Hartley turned around, facing Mr. Kucik. Mr. Kucik then told Fr. Hartley that he was serving him with a witness subpoena, holding the Subpoena out to Fr. Hartley so that he could read it, whereupon Fr. Hartley turned his back to Mr. Kucik without taking the Subpoena in his hand.

Mr. Kucik then requested that Fr. Hartley please take the Subpoena in his hand so that he would not have to leave it at Fr. Hartley's feet. When Fr. Hartley failed to respond, Mr. Kucik laid the Subpoena at his feet.

CNN reporter Joe Johns, through a proffer from CNN counsel David Vigilante, Esq., has informed that Mr. Johns saw Mr. Kucik approach Fr. Hartley and "attempt to hand some papers to Father Hartley" and that "Father Hartley took a quick look at the papers and walked away. At that point [the] gentleman [Mr. Kucik] said something like 'Father Hartley, I am laying the document at your feet….' or 'I am laying the subpoena at your feet.' Father Hartley did not look back and kept walking."[3] Mr. Johns's account is entirely consistent with Mr. Kucik's and contradicts Fr. Hartley's Declaration in several material respects.

---

[3] Mr. Vigilante further apprises that Mr. Johns will prepare an Affidavit next week consistent with his proffer as he is currently out of the area on assignment. With the Court's leave, the Vicinis will supplement the record with that Affidavit as soon as they receive it.

In *Novak v. World Bank*, cited *infra* at p. 7, the District of Columbia Circuit held that "laying at the feet", as Mr. Kucik did here, is effective service. Thus, the Court should overrule Fr. Hartley's primary objection to the Subpoena. The Court also should overrule the remaining objections on the grounds that Fr. Hartley waived them by failing to respond to the Subpoena in a timely manner. To the extent that the Court were to consider the remainder of Fr. Hartley's untimely Motion and Objections, which it should not, the Court should overrule them for the reasons stated below.

The Vicinis most respectfully request that the Court deny Fr. Hartley's Motion and order him to produce the requested documents and testify about the allegations he and Defendants made in *POS* so that vital discovery in the underlying Action may proceed.

## II.    ARGUMENT

### A.    Scott Kucik of Capitol Personally Served Fr. Hartley on November 14, 2007

In addition to the original Affidavit of Service executed by veteran process server, Scott Kucik of Capitol, on November 15, 2007, Mr. Kucik describes in painstaking detail how he served the Subpoena on Fr. Hartley at 5:02 pm on November 14, 2007, at the corner of 1st and Independence Avenue on Capitol Hill.

> 26.    As I approached within a few feet of Fr. Hartley and the Third Party [identified in Fr. Hartley's Declaration (¶ 9) as Joe Johns of CNN], I addressed Fr. Hartley by speaking his name.

> 27.    Fr. Hartley turned toward me, and I took an additional few steps so that I was with Fr. Hartley and the Third Party (that is, within approximately two feet).

> 28.    I told Fr. Hartley that I was serving him with a witness subpoena, while holding the Subpoena out toward him so that he could read it while I was serving him.

> 29.    Fr. Hartley turned his back to me without taking the Subpoena in his hand.

> 30.    I then requested that Fr. Hartley please take the Subpoena in his hand so that I would not have to leave it at his feet. As he ignored me, I continued to plead with him in a deferential and

apologetic manner for him to take the Subpoena.

> 31.    When Fr. Hartley failed to respond, I laid the Subpoena at his feet. I kept the witness fee in my hand because I did not want to put the cash on the ground.

> 32.    The light changed, after which Fr. Hartley and the Third Party crossed the street. After crossing the street, Fr. Hartley and the Third Party continued to walk not immediately hailing any taxi.

> 33.    I did not pursue Fr. Hartley across the street because I had already effected service.

Affidavit of Scott Kucik ("Kucik Aff.") at 4, **Exhibit A**. This Court has recognized that the affidavit of a process server such as Mr. Kucik gives rise to a rebuttable presumption that service was effected. *See Ali v. Mid-Atlantic Settlement Services, Inc.*, 233 F.R.D. 32, 38 (D.D.C. 2006) (citing *FROF, Inc. v. Harris*, 695 F.Supp. 827, 829 (E.D.Pa. 1988)).

In light of Mr. Kucik's detailed and explicit affidavit, confirmed in all material respects by a disinterested eye witness, Mr. Johns, it is beyond serious question that Farther Hartley's sworn statement that "no one approached me and attempted to hand me the Subpoena," Hartley Declaration, ¶¶ 7, 8, and "I did not see the individual" and "the individual did not hand me any documents and did not attempt to hand me any documents" *id.*, ¶ 9, are false. Indeed, after reviewing Fr. Hartley's Declaration, Mr. Kucik expressly refuted Fr. Hartley's assertions as inaccurate. Kucik Aff., ¶ 38, as does Mr. Johns.

Even had they not been exposed as falsehoods, Fr. Hartley's conclusory assertions would fall far short of overcoming the rebuttable presumption of effective service posed by Mr. Kucik's two affidavits. *See Ali*, 233 F.R.D. at 38 ("A naked refutation of a process server's affidavit is insufficient to rebut the presumption of effective service that a process server's affidavit establishes.") (citing *FROF*, 695 F.Supp. at 829); *see also Mobern Elec. Corp. v. Walsh*, 197 F.R.D. 196, 198 (D.D.C. 2000) (process server's affidavit of effective service not rebutted by defendant's conclusory allegation that he had not been served) (citing, *inter alia, O'Brien v. R.J. O'Brien & Assoc., Inc.*, 998 F.2d 1394, 1398

(7th Cir. 1993) (holding that affidavits of process servers are prima facie evidence of valid service that can be overcome only by "strong and convincing evidence")). Accordingly, Mr. Kucik's two affidavits, especially as bolstered by Mr. Johns's proffer, conclusively establish that the Vicinis effected personal service of the Subpoena on Fr. Hartley.

**B.    Fr. Hartley's Refusal to Take Physical Possession of the Subpoena Did Not Render Service Ineffective**

Though it is axiomatic that service of a Rule 45 subpoena, unlike service of a Rule 4 summons and complaint, can be effected only by personal service upon the nonparty witness, *see Federal Trade Commission v. Compagnie De Saint-Gobain-Pont-A-Mousson*, 636 F.2d 1300, 1313 (D.C. Cir. 1980), the mere fact that Fr. Hartley refused to take physical possession of the Subpoena did *not* render service ineffective. As a matter of law, Mr. Kucik properly effected service when he (i) informed Fr. Hartley that he was serving a witness subpoena upon him; (ii) held out the Subpoena to Fr. Hartley; and (iii) placed the Subpoena at Fr. Hartley's feet after Fr. Hartley failed to respond to his entreaties to take it in his hand.

The District of Columbia Circuit, like most others, holds that where, as here, a process server attempting to effect personal service is faced with an uncooperative individual, "service may be effected by leaving the papers at a location, such as on a table or on the floor, near that person." *Novak v. World Bank*, 703 F.2d 1305, 1310 n.14 (D.C. Cir. 1983) (citations omitted). In a virtually identical case, this Court has held that a process server serving a complaint and summons upon an uncooperative individual effected service when he addressed the individual by name, announced that he was serving court documents, and when the individual refused to take physical possession of the papers, left them at the individual's feet. *Mobern Elec.*, 197 F.R.D. at 197-98; *see also Doe v. Qi*, 349 F.Supp.2d 1258, 1274-75 (N.D. Ca. 2004) (holding that personal service was effected when process server, standing an arms-length away from defendant at an airport, held out a copy of summons and complaint and announced that he was serving court papers, even though defendant refused to take

physical possession of documents).

Here, Mr. Kucik not only addressed Fr. Hartley by name, clearly stating his intention to serve the Subpoena" upon Fr. Hartley, but he also held out the Subpoena to Fr. Hartley so that he could read it. Kucik Aff., ¶¶ 26-28. After Fr. Hartley turned his back on Mr. Kucik without taking the Subpoena in his hand, Mr. Kucik requested that Fr. Hartley please take the Subpoena in his hand so he would not have to leave it at his feet, which Mr. Kucik ultimately had to do after Fr. Hartley ignored his repeated pleas. *Id.* at ¶¶ 30, 31. Applying *Novak*, Mr. Kucik effected service on Fr. Hartley. *See, e.g., Qui*, 349 F.Supp.2d at 1275, n.5 ("The fact that Defendant Liu did not take possession of the court papers is of no import. Where a defendant attempts to avoid service, *e.g.*, by refusing to take the papers, it is sufficient if the server is in close proximity to the defendant, clearly communicates intent to serve court documents, and makes reasonable efforts to leave the papers with the defendant.") (citing, *inter alia, Novak*, 703 F.2d at 1310, n.14); *accord* 4A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1095 (3d ed. 2007).[4]

## C.    Fr. Hartley Waived His Objections by Not Timely Filing Them

The Court should rule untimely the entirety of Fr. Hartley's objections to the Subpoena, which he served via first class mail on the afternoon of January 4, 2008 (received on January 7), along with his Motion to Quash. **Exhibit B**. Fr. Hartley failed to serve his objections within 14 days after his subpoena was served by Mr. Kucik as required under Rule 45(c)(2)(B).

As discussed above, Fr. Hartley was properly and personally served with the Subpoena on November 14, 2007. Rule 45(c)(2)(B) expressly requires that objections to requests for production of documents "must be served before the earlier of the time specified for compliance or 14 days

---

[4] The rationale behind these holdings is clear and sound. Were it required that papers actually be placed in the hands of the recipient, a process server would face the untenable dilemma of either: a) physically forcing the recipient to take hold of the document (which might induce fear or even lead to a violent encounter); or b) not being able to accomplish his or her lawful task. Applied to this case, the Court could well imagine the absurd and potentially dangerous spectacle of Fr. Hartley and Messrs. Johns and Kucik wrestling in the shadows of the United States Capitol.

after the Subpoena is served." Fr. Hartley therefore had to serve his objections by no later than November 28, 2007. Instead, he waited to serve his objections until January 4, 2008, 52 days after service of the Subpoena, to serve any objections. "'The failure to serve written objections to a subpoena within the time specified by Rule 45(c)(2)(B) typically constitutes a waiver of such objections.'" *Alexander*, 186 F.R.D. at 34 (citations omitted). Moreover, though not calling upon Fr. Hartley to testify until January 31, 2008, the Subpoena required him to produce the categories of documents at <u>10:00 a.m.</u> on January 14. Hartley filed his Motion and served his Objections that <u>afternoon</u> thus, missing that deadline as well. Accordingly, Fr. Hartley's failure to serve his objections within the mandatory fourteen (14) day period after service constitutes waiver of his objections (as does the fact that he did not object to producing documents until <u>after</u> they were actually due), which the Court should rule untimely.[5]

**D.      The Subpoena Is Neither Unduly Burdensome Nor Defective**

      **1.      Fr. Hartley Has Not Shown Undue Burden**

In moving to quash Fr. Hartley bears a "heavy burden" of proving that the Subpoena is "unduly burdensome." *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403-04 (D.C. Cir. 1984) (citing *Westinghouse Electric Corp. v. City of Burlington, Vt.*, 351 F.2d 762 (D.C. Cir. 1965)). Specifically, Fr. Hartley is required to "adequately demonstrate" grounds supporting the claim of undue burden under Rule 45(c)(3)(A)(iv). *Id.* (requiring parties moving to quash to provide the court with specific evidence of undue burden). Moreover, "[t]he quashing of a subpoena is an extraordinary measure, and is usually inappropriate absent extraordinary circumstances…. A court should be loathe to quash a subpoena if other protection of less absolute character is possible….

---

[5] Fr. Hartley is not entitled to any of the exceptions applied to excuse untimely objections in "unusual circumstances" because the Subpoena is specific and particularized rather than overly broad and, given the serious errors and omissions in his Declaration regarding service and his refusal to cooperate with the process server and take possession of the Subpoena, it is highly doubtful that Fr. Hartley was acting in good faith. *See Alexander*, 186 F.R.D. at 34 (enumerating the "unusual circumstances" in which courts may excuse untimely objections).

Consequently, the movant's burden is greater for a motion to quash than if she were seeking more limited protection." *Flanagan v. Wyndam Int'l, Inc.*, 231 F.R.D. 98, 102 (D.D.C. 2005) (internal citations omitted).

Fr. Hartley has not met that heavy burden, offering only a few conclusory assertions. *See* Mem. at 4. For example, he does not describe the location or volume of documents he claims are too difficult to produce, nor does he indicate how many times has traveled to the United States within the last year, including the District of Columbia. *See id.* Tellingly, while Fr. Hartley readily discloses that he is not a United States citizen and was assigned to perform mission work in Ethiopia by "my Archdiocese," *see* Declaration, ¶¶ 2, 3, he fails to disclose that this is the Archdiocese of New York, and that, prior to his assignment to perform mission work in the Dominican Republic and Ethiopia, he had been serving as a parish priest in New York City for thirteen years. Fr. Hartley's work and his employer require him to visit the United States on a regular basis. Fr. Hartley has attended conferences and speaking engagements in the United States involving human rights issues, including Defendants' screening of *POS* in the District of Columbia on November 14, 2007. *See id.*, ¶ 6.

In light of Fr. Hartley's sworn misrepresentations denying the truth as to the facts actual of establishing service, the Court should not accept Fr. Hartley's conclusory assertion that "I do not regularly travel to the District of Columbia," *id.*, ¶ 4, particularly as Fr. Hartley already has admitted that he visited the United States for a three-week period, including a three-day visit to the District of Columbia, occurring less than three months into his mission posting in Ethiopia. Regardless, such conclusory assertions are plainly insufficient to satisfy the heavy burden required to demonstrate that compliance with the Subpoena would pose an undue burden under Rule 45(c)(3)(A)(iv). *See Northrop*, 751 F.2d at 403-04 (citation omitted); *see also Rimstat, Ltd. v. Hilliard*, 207 B.R. 964, 969-70 (D.D.C. 1997) ("Mere assertions that compliance [with a Rule 45 subpoena] would be burdensome

are insufficient to satisfy [movant's] burden... This court cannot quash or modify a subpoena based on mere assertions alone.") (citing 9A Wright & Miller, *Fed. Prac. & Proc.* § 2459 (2d ed. 1995)).

Beyond the requirement that the moving party carry the heavy burden of demonstrating undue burden, courts must balance the interests served by requiring compliance with those of the movant seeking to quash, examining factors such as the serving party's need for the information sought and the nature and importance of the litigation. *See Linder v. Dept. of Defense*, 133 F.3d 17, 24 (D.C. Cir. 1998) (citing *Northrop*, 751 F.2d at 403); *see also* 9A Wright & Miller, *Fed. Prac. & Proc.* § 2463.1 (3d ed. 2008) (discussing court's consideration of factors such as necessity of information and whether it is available from another source).

Fr. Hartley's motion papers address only one side of this balancing equation in asking the Court to quash the Subpoena, Mem. at 3-4, completely ignoring the applicable balancing of factors set forth in the *Alexander* case cited in his brief in which the Court balanced "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, and the particularity with which the documents are described and the burden imposed." *Alexander v. F.B.I.*, 186 F.R.D. 21, 34 (D.D.C. 1998) (citation omitted).

Applying these factors, the Court should find that the Subpoena is reasonable and does not impose an undue burden. In fact, the Subpoena is narrowly tailored to requests for specific information and documents regarding Fr. Hartley's communications and interactions with Defendants and other individuals or entities, each of which is highly relevant to Plaintiffs' defamation case in the underlying Action. Further, the requests are all confined to an established, finite time period. Finally, as Defendants' key witness and the Vicinis' primary accuser in *POS*, Father Hartley has knowledge and documents essential to the Action.

Because Fr. Hartley fails to carry his heavy burden of demonstrating, with the requisite degree of specificity, his assertion of undue burden, the Court should deny his Motion to Quash.

2.      **Fr. Hartley's Conclusory Declaration Does Not Entitle Him to the Protection of Rule 45(c)(3)(A)(ii)**

Fr. Hartley also attempts to claim the protections of Rule 45(c)(3)(A)(ii)'s provision that a court should quash a subpoena if it requires a non-party to travel more than 100 miles from a place where that person "resides, is employed or regularly transacts business." However, as with claims of "undue burden," the moving party bears the burden of proof under Rule 45(c)(3)(A)(ii). *Rimstat*, 207 B.R. at 969 (citing *Northrop*, 751 F.2d at 403); *see also Regents of Univ. of California v. Kohne*, 166 F.R.D. 463, 465 (S.D. Cal. 1996). Again, Fr. Hartley falls far short of meeting his burden of establishing that he is entitled to quash the Subpoena pursuant to Rule 45(c)(3)(A)(ii).

In *Kohne*, the movant's motion to quash was denied because he "presented insufficient evidence for the Magistrate" to conclude that he did not "regularly transact business in person within 100 miles of the courthouse." *Kohne*, 166 F.R.D. at 465. The Court required some factual information regarding the number of times the movant transacted business within the 100 miles during a set time period. *Id.*

Just as in *Kohne*, Fr. Hartley, has failed to meet his burden. Among other deficiencies, Fr. Hartley's Declaration fails to disclose how many times he has visited the District of Columbia over the past years or how often he transacts business within 100 miles of the District of Columbia. He also conspicuously omits that his employer is located in New York, and that he has attended conferences and related events in the United States, such as the screening of *POS* held on November 14, 2007 on Capitol Hill.[6] Instead, Fr. Hartley merely asserts that he "does not regularly travel to the District of Columbia." Declaration, ¶ 4. Such conclusory assertions fail to satisfy a movant's burden to show that the Subpoena should be quashed. *Rimstat*, 207 B.R. at 969 (citing *Northrop*, 751 F.2d at 403).

---

[6] Upon information and belief, the November 14, 2007, screening of *The Price of Sugar* which Fr. Hartley attended was held by the Congressional Human Rights Caucus.

Having failed to meet his burden of proof, Fr. Hartley is not entitled to the relief he seeks under Rule 45(c)(3)(A)(ii), and his Motion to Quash should be denied.

**3.      The Subpoena Is Not Defective**

Contrary to Fr. Hartley's assertion, Mem. at 5, the Subpoena does *not* lack the text of Rule 45 (c) and (d).  Exhibit 1 of Mr. Kucik's Affidavit is a copy of the Subpoena he personally served upon Fr. Hartley.  The second page of Exhibit 1 contains the text of Rule 45(c) and (d), as required by Rule 45(a)(1)(A)(iv).[7]

Mr. Kucik also tendered the $40 witness fee as required by Rule 45(b)(1) to Fr. Hartley, which Fr. Hartley refused to take along with his copy of the Subpoena.  Kucik Aff., ¶¶ 11, 28, 31. Because Fr. Hartley currently resides in Ethiopia, tendering his reasonable travel expenses along with the witness fee at the time of service was not practicable.  However, in compliance with 28 U.S.C. § 1821(c)(1), Plaintiffs will advance to Fr. Hartley his "actual expenses of travel" for coach class airline tickets to and from Ethiopia prior to taking his deposition in the District of Columbia, in addition to any other allowances required under 28 U.S.C. § 1821.  Plaintiffs also stand ready to be flexible in terms of rescheduling the date, time and even the place of the deposition to accommodate Fr. Hartley.

Thus, Fr. Hartley's subpoena is not defective, and his Motion to Quash should be denied.

**III.      CONCLUSION**

Based upon the foregoing, the Court should deny Fr. Hartley's Motion to Quash and enforce the Subpoena, ordering Fr. Hartley to be deposed in the District of Columbia on January 31, 2008, and produce the requested documents as specified in the Subpoena.

---

[7] The copy of the Subpoena attached to Fr. Hartley's Motion (which could only have been provided by Defendants' counsel, whom Plaintiffs had copied) included only one side of the two-sided document, leading counsel to believe erroneously that the text of Rule 45 had been omitted from the original actually served on Fr. Hartley.

**<u>ORAL HEARING REQUESTED</u>**

Pursuant to Local Civil Rule 7(f), Plaintiffs respectfully request an oral hearing on Fr.

Hartley's Motion.


Respectfully submitted,


<u>/s/ Benjamin G. Chew</u>
Read K. McCaffrey
Stephen Díaz Gavin
Benjamin G. Chew (D.C. Bar #418577)
PATTON BOGGS LLP
2550 M Street, N.W.
Washington, DC  20037
Telephone:  (202) 457-6000
Facsimile:  (202) 457-6315
E-mail:  bchew@pattonboggs.com

*Counsel for Plaintiffs Felipe Vicini Lluberes and Juan Vicini Lluberes*

Dated:  January 18, 2008

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 18th day of January, 2008, I mailed by first class mail, postage prepaid, and electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF), the foregoing Opposition to Father Christopher Hartley's Motion to Quash his Deposition Subpoena *Duces Tecum*, to the following:

Sean M Hanifin, Esq.
ROSS DIXON & BELL LLP
2001 K Street, N.W.
Washington, DC 20006
Telephone: (202) 662-2000
Facsimile: (202) 662-2190
E-mail: shanifin@rdblaw.com

*Counsel for Father Christopher Hartley*

Elizabeth C. Koch, Esq.
LEVINE SULLIVAN KOCH & SHULTZ, LLP
1050 17th Street, N.W.
Suite 800
Washington, DC 20036
Telephone: (202) 508-1100
Facsimile: (202) 861-9888
E-mail: BKoch@skslaw.com

*Counsel for Defendants*

/s/ Benjamin G. Chew
Benjamin G. Chew

4932740

15

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| FELIPE VICINI LLUBERES, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )    Civil Action No. 1:08-mc-00010-RJL |
| | ) |
| UNCOMMON PRODUCTIONS, LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## AFFIDAVIT OF SCOTT KUCIK

I, Scott Kucik, do hereby swear and affirm under the penalties of perjury that the following information is based on my personal knowledge, that I am competent to so testify, and that it is both true and correct.

1.      I grew up here in Washington, D.C. and graduated from Gonzaga College High School in 1984.

2.      In 1989, I graduated from The Catholic University of America, earning my degree in English literature.

3.      I am married, and my wife and I have a four-month old daughter. We are of the Catholic faith.

4.      I have been employed as a process server and as a Manager at Capitol Process Services ("Capitol") for approximately ten years.

5.      I have personally served process for approximately ten years, many here in the District of Columbia. I also supervise approximately ten to fifteen process servers at Capitol, ensuring that the applicable rules and procedures are followed. I also have served process on behalf

of many state and federal courts, including this Honorable Court on many occasions. On no occasion has any Court or arbitral body determined that any Affidavit of Service I signed was in any way inaccurate or incorrect.

6.    As set forth below, on Wednesday, November 14, 2007 at 5:02 p.m. I personally served Father Christopher Hartley with a Subpoena *duces tecum* (the "Subpoena"), a true and correct copy of which is attached hereto as **Exhibit 1**.

7.    Benjamin G. Chew of Patton Boggs LLP, one of the counsel for Plaintiffs in the above-captioned matter, first contacted me about serving Fr. Hartley on or about Tuesday, November 13.

8.    Mr. Chew explained to me that, given that the person to be served was a Catholic priest, he wanted the service to be effected in the most sensitive, unobtrusive and respectful way possible. Indeed, given the sensitivity of the assignment, Mr. Chew asked that either David Felter, Capitol's owner, or I, personally effect the service on Fr. Hartley.

9.    After I told Mr. Chew that I would handle the service of Father Hartley, he explained that Fr. Hartley would be appearing at a Congressional hearing the next day, and that I should meet him there for lunch to discuss the particulars.

10.   The next day I met Mr. Chew and his colleague Nigel L. Wilkinson for lunch at a restaurant on Capitol Hill.

11.   At lunch, Mr. Chew apprised me that the three of us were to attend the hearing but, to avoid embarrassment to Fr. Hartley, I was not to serve him with the Subpoena until he was out of the building and away from any crowd. Mr. Chew also provided me $40 in cash, which he directed me to serve on Fr. Hartley as the requisite witness fee along with the Subpoena.

4931256                                             2

12.     After the lunch I attended the hearing, sitting next to Mr. Chew. Mr. Wilkinson sat in another part of the room. Fr. Hartley spoke at great length, mentioning the Vicini family many times. Mr. Chew and I both brought cell phones to the hearing.

13.     At my direction, Ambiko Guice of Capitol was parked in a vehicle outside.

14.     I planned that, after the hearing, Mr. Guice and I would follow Fr. Hartley and serve him in a quiet and respectful manner.

15.     At the end of the hearing I separated from Mr. Chew and waited for Fr. Hartley to emerge from the hearing room.

16.     After a few minutes Fr. Hartley came into the hall and entered the elevator with an African American male who was approximately 6'3", 240 pounds, and appeared to be in his forties/fifties with close-cropped hair (the "Third Party").

17.     I entered the elevator with Fr. Hartley and the Third Party. Fr. Hartley and the Third Party spoke to each other in what appeared to be a familiar manner.

18.     Fr. Hartley and the Third Party exited the elevators and proceeded down a flight of stairs arriving at the entrance of Independence Avenue, as did I.

19.     All three of us exited the building.

20.     Per my instructions, Mr. Guice was parked in front of the building.

21.     Fr. Hartley and the Third Party began walking toward 1st and Independence Avenue.

22.     I followed Fr. Hartley and the Third Party, staying at a distance of about 20-30 yards behind them.

23.     Mr. Guice was unable to move his vehicle because it was stuck in traffic.

24.     I became concerned that Fr. Hartley and the Third Party would hail a taxi, which would make my continued following of them difficult or impossible. Accordingly, I called Mr.

Chew on my cell phone for instructions. Mr. Chew asked me to please proceed to serve the Subpoena on Fr. Hartley.

25.    At that time, Fr. Hartley and the Third Party were walking at a leisurely pace. Having concluded my brief telephone conversation with Mr. Chew, I quickened my pace, and, at the intersection of 1st and Independence Avenue, I closed the distance, arriving behind the two waiting for the stoplight to change.

26.    As I approached within a few feet of Fr. Hartley and the Third Party, I addressed Fr. Hartley by speaking his name.

27.    Fr. Hartley turned toward me, and I took an additional few steps so that I was with Fr. Hartley and the Third Party (that is, within approximately two feet).

28.    I told Fr. Hartley that I was serving him with a witness subpoena, while holding the Subpoena out toward him so that he could read it while I was serving him.

29.    Fr. Hartley turned his back to me without taking the Subpoena in his hand.

30.    I then requested that Fr. Hartley please take the Subpoena in his hand so that I would not have to leave it at his feet. As he ignored me, I continued to plead with him in a deferential and apologetic manner for him to take the Subpoena.

31.    When Fr. Hartley failed to respond, I laid the Subpoena at his feet. I kept the witness fee in my hand because I did not want to put the cash on the ground.

32.    The light changed, after which Fr. Hartley and the Third Party crossed the street. After crossing the street, Fr. Hartley and the Third Party continued to walk not immediately hailing any taxi.

33.    I did not pursue Fr. Hartley across the street because I had already effected service.

34.    I called Mr. Chew from the scene on my cell phone, informing him that I had

effected service on Fr. Hartley, but that Fr. Hartley had refused to take the Subpoena, requiring me

to leave the Subpoena at Fr. Hartley's feet.

35.    After completing my telephone conversation with Mr. Chew, I waited at the place I

served Fr. Hartley for approximately ten minutes. At that point, when it was clear that Fr. Hartley

would not be returning to retrieve the Subpoena, I picked it up, so as to avoid someone else picking

it up, which might have embarrassed Fr. Hartley. I later returned the Subpoena to Mr. Chew.

36.    On November 15, 2007, I executed an Affidavit of Service, a true and correct copy

of which is attached as **Exhibit 2**.

37.    Mr. Chew recently provided me a copy of Fr. Hartley's Motion to Quash Non-Party

Subpoena, including the Declaration of Father Christopher Hartley (January 4, 2008) ("Hartley

Declaration").

38.    Paragraph 9 of the Hartley Declaration reads as follows:

> "During the afternoon of November 14, 2007, while accompanied by
> a reporter from CNN, Joe Johns, I did hear an individual call out my
> name as I crossed an intersection near the United States Capitol
> building in the District of Columbia. However, I did not see the
> individual. The individual did not hand me any documents or
> attempt to hand me any documents."

The Hartley Declaration is inaccurate in several respects:

a)    First, I did not call out his name as he crossed the intersection. Rather, I approached
and addressed him respectfully as he and the Third Party waited at the light.

b)    Second, Fr. Hartley turned toward me and very definitely saw me as I was speaking
to him, during which time I was within only about two feet of him.

c)    Third, he saw me hold out the Subpoena to him.

d)    Fourth, not only did I attempt to hand him the Subpoena, but also, when Fr. Hartley
turned his back to me to avoid the Subpoena, I asked him explicitly to take the Subpoena in his
hand so that I would not have to leave it at his feet.

4931256                                    5



Scott Kucik

District of Columbia: SS

Subscribed and sworn to before me this 16th day of January , 2008.

*Nicole G. Davis*          Notary Public

Nicole G. Davis
Notary Public, District of Columbia
My Commission Expires 01-14-2009

My Commission Expires:_____

# EXHIBIT 1

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

### DISTRICT OF COLUMBIA

FELIPE VICINI LLUBERES, et al.

V.

UNCOMMON PRODUCTIONS, LLC, et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  07-11623 (DPW) D. Mass.

TO:  Fr. Christopher Hartley

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☑  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION    Patton Boggs, LLP, 2550 M Street, N.W., Washington, DC  20037 | DATE AND TIME  8:00<br>1/15/2008 10:00 am<br>31 |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A

| PLACE    Patton Boggs, LLP, 2550 M Street, N.W., Washington, DC  20037 | DATE AND TIME<br>1/4/2008 10:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
|  | 11/14/2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Benjamin G. Chew, Esq., Patton Boggs, LLP, 2550 M Street, N.W., Washington, DC  20037  (202) 457-6000
Attorneys for Plaintiffs

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## ATTACHMENT A

### **INSTRUCTIONS AND DEFINITIONS**

1.      If You assert either privilege or immunity as a ground for not responding fully to any document request below, please describe the bases for such assertion and the nature of the information not disclosed with sufficient particularity to permit Plaintiffs to assess the validity of Your privilege claim, and provide such information as is required by Federal Rule of Civil Procedure 26(b)(5) and the Local Civil Rules of the United States District Court for the District of Columbia.

2.      If You object to or refuse to respond fully to any part of any document request below on grounds other than privilege or immunity, please describe the grounds separately, fully and with sufficient particularity to permit Plaintiffs to assess the validity of Your objection.

3.      The singular shall be deemed to include the plural, the plural to include the singular, and words in the masculine, feminine, or neuter shall include each of the other genders as necessary to make this request inclusive rather than exclusive. The words "and" and/or "or" shall be construed conjunctively or disjunctively as necessary to make this request inclusive rather than exclusive. Use of the past tense includes the present tense, and use of the present tense includes the past tense. Each document request below shall be construed so as to furnish the most complete and inclusive answer.

4.      If You believe that any word or phrase in a document request below is ambiguous, or if You do not understand any word or phrase below, identify the ambiguity or source of confusion and explain the definition or understanding that You relied upon in responding.

5.      In producing documents, You shall furnish all documents in Your possession, custody, or control, regardless of whether such documents and things are possessed by You or Your predecessors, successors, subsidiaries, partners, directors, officers, agents, employees, representatives, managing agents, affiliates, investigators, or by its attorneys of its agents, employees,

representatives or investigators. Without limitation of the term "control," a document is deemed to be in Your control if You have the right to secure the documents or a copy thereof from another person or public or private entity having actual possession thereof. If any document requested herein is not in Your possession, custody or control, then You are required to produce the best available copy, and to state, to the best of Your knowledge, the name and address of the person in possession and/or control of the original thereof. The fact that a document is in possession of another party does not relieve You of the obligation to produce its copy of the document, even if the two documents are identical.

6.      All documents shall be either produced as they are kept in the usual course of business or organized and labeled to correspond with the numbered categories of this request. A request for a document shall be deemed to include a request for any and all file folders within which the document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the documents in addition to the document itself.

7.      Documents shall be produced in such a fashion as to identify the department or office in whose possession such documents and things were located, and, where applicable, the natural person in whose possession they were found and the address of the custodian(s) of each document and thing.

8.      Any document withheld from production on the grounds of any privilege, doctrine, or immunity shall be identified by You, including identification of:

     A.      The reason for assertion of privilege, work product or other grounds for non-disclosure;

     B.      A statement of the basis for the claim of privilege, work product or other grounds for non-disclosure;

     C.      A description of any document responsive to the request, including in said

description the name and job title of the author, the name and job title of any person or persons who have received a copy of and/or reviewed the document, the date of the document, its subject matter and the identity, job title and current address of its current custodian;

     D.    The name, business address, and present position of the document's author(s);

     E.    The position of the author(s) at the time the document(s) was/were prepared;

     F.    The name, business address, and present position of the document's addressee and all other recipients of the document(s);

     G.    The position of the document's addressee and all other recipients at the time the document(s) was/were prepared and at the time it was received; and

     H.    The facts and law upon which You will rely in support of that contention in response to a motion to compel.

9.    Each request for a document shall be construed to include all preliminary or draft versions of that document. In the event that a copy of any document sought by this request is not identical to any other copy thereof by reason of marginal notations or otherwise, each such non-identical copy is deemed to be a separate document and is to be produced hereunder.

10.    If any document within the scope of this request is not produced either because it has been destroyed or because it is no longer in Your custody or control, identify (a) the number of the request for production to which it would have been responsive, (b) its author, (c) all addressees and intended and unintended recipients, including recipients of blind copies, (d) its date, (e) its subject matter, (f) its current location, (g) the person or entity that has possession, custody, or control, (h) the reason that it was not produced, (i) the date and circumstances of its loss, destruction, or release from custody, and (j) the person authorizing the loss, destruction, or release

from custody.

11.    Unless a different time period is set forth in a specific document request, the time period covered by these document requests is January 1, 2003 through the present.

12.    Unless context clearly indicates otherwise, the following words shall be deemed to have the following meanings:

A.    "Communication" means any oral statement or statement that is written or recorded in any manner that is conveyed by one person to another person, any statement made by one person in the presence of one or more other persons, and any document or information delivered, including delivery by any electronic or digital means, by or for one person to another person.

B.    "You," or "Your," means Father Christopher Hartley and your predecessors, successors, subsidiaries, partners, agents, officers, directors, employees, consultants, attorneys and representatives.

C.    "Document" is intended to have the broadest possible meaning and include, without limitation, all originals, non-identical copies, and copies with marginal notations or interlineations of any written or graphic matter, as well as computer files and computer data (including computer tapes, computer drives or memories, computer diskettes or disks, electronic mail ("email"), CD Roms, etc), however produced or reproduced, in Your possession, custody, access or control, including, but not limited to, recordings, film, video, photographs, blueprints, correspondence, telegrams, notes, sound recordings of any type, notes of telephone conversations or meetings, minutes of meetings, memoranda, interoffice communications, studies, analyses, reports, results of investigations, contracts, licenses, agreements, working papers, government records, ledgers, books of account, invoices, charts, slips, logs, computer data, diaries or papers similar to any of the foregoing, however denominated, and specifically includes any preliminary notes, outline or draft of any of the foregoing. It also includes, but is not limited to, any electronically stored data on

magnetic or optical storage media as an "active" file or files (readily readable by one or more computer applications or forensics software); any "deleted" but recoverable electronic files on said media; any electronic file fragments (files that have been deleted and partially overwritten with new data).

D.    "Haney" means the Defendant William M. Haney, III, and all of his partners, agents, officers, directors, employees, consultants, attorneys and representatives.

E.    "Uncommon Productions" means the Defendant Uncommon Productions, LLC and its predecessors, successors, subsidiaries, partners, agents, officers, directors, employees, consultants, attorneys and representatives.

F.    "Person" or "individual" shall be deemed to include natural persons, partnerships, joint ventures, firms, associations, proprietorships, corporations, or other such entities and all subsidiaries, agents, employees, and representatives thereof.

G.    "Pertaining to," "relating to," "related to," "reflecting," "with respect to," "regarding," "referring to," "in reference to," and "concerning" shall be interpreted broadly, including both explicit and implicit references, and shall mean, without limitation, relating to, regarding, constituting, defining, discussing, containing, embodying, reflecting, stating, dealing with, prepared in contemplation of, prepared in connection with, prepared as a result of, or in any way pertaining to.

H.    "Plaintiffs" means the Plaintiffs in this case, Felipe Vicini Lluberes and Juan Vicini Lluberes and their partners, agents, officers, directors, employees, consultants, attorneys and representatives.

Please Produce:

1.  All documents related to communications between You and Haney.

2.  All documents related to communications between You and Uncommon Productions.

4921164

3. All documents related to communications between You and Louise Rosen.

4. All documents related to communications between You and Mitropoulos Films.

5. All documents related to communications between You and Plaintiffs.

6. All documents related to communications between You and Campos de Moya.

7. All documents related to communications between You and Ricardo Hernandez.

8. All documents related to communications between You and Richard Perez.

9. All documents related to communications between You and Amy Serrano.

10. All documents related to communications between You and Pierre (Pedro) Ruquoy.

11. All documents related to communications between You and Celine Anaya-Gautier.

12. All documents related to communications between You and Gerard Maximin.

13. All documents related to communications between You and Brian McKenna.

14. All documents related to communications between You and any person affiliated with Siren Studios.

15. All documents related to communications between You and any person affiliated with Canaille Productions.

16. All documents related to communications between You and Jhonny Belizaire.

17. All documents related to communications between You and Yela Machasa.

18. All documents related to communications between You and Noemi Mendez.

19. All documents related to communications between You and Monsigniour Francisco Osorio.

20. All documents related to the film entitled *The Price of Sugar*.

21. All documents related to the film entitled *The Sugar Babies*.

22. All documents related to the film entitled *Batey Zero*.

23. All documents related to the film entitled *Big Sugar*.

24. All documents regarding Your assignment out of the Dominican Republic.

4921164

# EXHIBIT 2

U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

Felipe Vicini Lluberes, et al.

vs.

Uncommon Productions, LLC, et al.

No. 07-11623 (DPW)

**AFFIDAVIT OF SERVICE**

to wit: Washington, DC

I, SCOTT KUCIK, having been duly authorized to make service of the Deposition Subpoena Duces Tecum and Attachment A in the above entitled case, hereby depose and say:

That my date of birth / age is 04-15-1966.

That my place of business is 1827 18th Street, N.W., Washington, D.C. 20009 (202) 667-0050.

That service was made by a private process server.

That I am not a party to or otherwise interested in this suit.

That at 5:02 pm on November 14, 2007, I served Fr. Christopher Hartley at 1st & Independence Avenue, Capital Hill, Washington, DC by serving Fr. Christopher Hartley, personally. Described herein:

|          |             |
|----------|-------------|
| SEX-     | MALE        |
| AGE-     | 58          |
| HEIGHT-  | 6'0"        |
| HAIR-    | MIXED GRAY  |
| WEIGHT-  | 210         |
| RACE-    | WHITE       |

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Affidavit of Service is true and correct.

Executed on ___11-15-07___
              Date

SCOTT KUCIK
1827 18th Street, N.W.,
Washington, D.C. 20009
Our File#- 197526

# EXHIBIT B

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

---

FELIPE VICINI LLUBERES, ET AL.,

               Plaintiffs,

     v.

UNCOMMON PRODUCTIONS, LLC, ET AL.,

               Defendants.

---

Civil Action No. 07-11623 (D. Mass.)



### NON-PARTY FATHER CHRISTOPHER HARTLEY'S OBJECTIONS TO PLAINTIFFS' DEPOSITION SUBPOENA *DUCES TECUM*

Non-party Father Christopher Hartley ("Father Hartley") by and through his attorneys, Ross, Dixon & Bell, LLP, and pursuant to Rule 45 of the Federal Rules of Civil Procedure, hereby states his Objections to Plaintiffs Felipe Vicini Lluberes' and Juan Vicini Lluberes' (collectively, "Plaintiffs") Deposition Subpoena *Duces Tecum* to him.

### OBJECTIONS

Father Hartley hereby objects to Plaintiffs' Deposition Subpoena *Duces Tecum* subject to the following objections, without waiving and expressly preserving all such objections:

1.    Father Hartley objects to Plaintiffs' Deposition Subpoena *Duces Tecum* on the grounds that the subpoena was not served on Father Hartley in accordance with Federal Rules of Civil Procedure.

2.    Father Hartley objects to Plaintiffs' Deposition Subpoena *Duces Tecum* on the grounds that notice of the subpoena was not properly and timely served upon all parties to this action as required by the Federal Rules of Civil Procedure.

3.     Father Hartley objects to Plaintiffs' Deposition Subpoena *Duces Tecum* on the grounds that Plaintiffs have failed to comply with Federal Rules of Civil Procedure 30(a)(2) and 30(b).

4.     Father Hartley objects to Plaintiffs' Deposition Subpoena *Duces Tecum* on the grounds that Plaintiffs have failed to comply with Federal Rule of Civil Procedure 45(b).

5.     Father Hartley objects to Plaintiffs' Deposition Subpoena *Duces Tecum* on the grounds that, as filed and served by Plaintiffs, the Subpoena *Duces Tecum* fails to include the required wording of Federal Rules of Civil Procedure 45(c) and (d).

6.     Father Hartley objects to Plaintiffs' Deposition Subpoena *Duces Tecum* to the extent that it was issued for improper purposes, or to harass, or with the intent to cause undue burden.

7.     Father Hartley objects to Plaintiffs' Deposition Subpoena *Duces Tecum* to the extent it seeks documents or would require disclosure of information that is protected by the attorney-client privilege, attorney work product doctrine, the common interest doctrine or any other privilege, doctrine or rule.

8.     Father Hartley objects to Plaintiffs' Deposition Subpoena *Duces Tecum* to the extent that it seeks documents or would require the disclosure of information that is protected by the priest-penitent privilege or other religious or pastoral privileges.

9.     Father Hartley objects to Plaintiffs' Deposition Subpoena *Duces Tecum* to the extent its document requests are overbroad, vague and/or ambiguous, or seek documents that are unrelated to the matters at issue in the underlying action and are not reasonably calculated to lead to the discovery of admissible evidence.

2

10.     Father Hartley objects to Plaintiffs' Deposition Subpoena *Duces Tecum* to the extent that particular document requests, or any words or terms used therein, are vague, ambiguous, subject to different interpretations, require knowledge of persons or parties other than Father Hartley, or involve issues of law subject to resolution by the Court.

11.     Father Hartley objects to Plaintiffs' Deposition Subpoena *Duces Tecum* to the extent it seeks documents or would require disclosure of information that is proprietary and/or confidential in nature, including but not limited to, documents or information concerning third-parties in the Dominican Republic potentially subject to labor and/or human rights abuses.

12.     Father Hartley objects to Plaintiffs' Deposition Subpoena *Duces Tecum* to the extent it seeks documents or would require disclosure of information outside of the possession, custody or control of Father Hartley.

13.     Father Hartley objects to Plaintiffs' Deposition Subpoena *Duces Tecum* to the extent it seeks documents or would require disclosure of information as easily available to Plaintiffs as they are to Father Hartley.

14.     Father Hartley objects to Plaintiffs' Deposition Subpoena *Duces Tecum*, including the Instructions and Definitions, to the extent it purports to impose discovery obligations beyond those established by the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Columbia.

15.     Father Hartley objects to Plaintiffs' Deposition Subpoena *Duces Tecum*, including the Instructions and Definitions, to the extent it purports to define words or phrases in a manner different than their ordinary use.

16.     Father Hartley reserves the right to supplement his objections to Plaintiffs' Deposition Subpoena *Duces Tecum* to the extent necessary and appropriate.

3

Respectfully submitted,

Dated: January 4, 2008

By: _____
Sean M. Hanifin (D.C. Bar No. 358347)
ROSS, DIXON & BELL, LLP
2001 K Street, N.W.
Washington, D.C.  20006-1040
Telephone:  (202) 662-2000
Facsimile:    (202) 662-2190

Attorneys for Non-Party Father Christopher
Hartley

4

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of January, 2008, a copy of the foregoing, Non-Party

Father Christopher Hartley's Objections to Plaintiffs Felipe Vicini Lluberes' and Juan Vicini

Lluberes' Deposition Subpoena *Duces Tecum*, was served via first class mail on the following

counsel of record:

Read K. McCaffrey
Stephen Diaz Gavin
Benjamin G. Chew
PATTON BOGGS LLP
2550 M Street, N.W.
Washington, D.C. 20037

*Attorneys for Plaintiffs*

Elizabeth C. Koch
LEVINE SULLIVAN KOCH & SCHULTZ, LLP
1050 17th Street N.W.
Suite 800
Washington, D.C. 20036

*Attorneys for Defendants*

_____
Sean M. Hanifin
Attorneys for Non-Party Father Christopher Hartley

362689 v 1

5